**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AUGUST BRYAN KREIS, IV,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-1486** |
| | : | |
| **NORTHAMPTON COUNTY, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

Plaintiff August Bryan Kreis IV filed a pro se civil rights complaint under 42 U.S.C. § 1983, asserting violations of his rights when he was incarcerated at the Northampton County Prison ("NCP"), first as a pretrial detainee and then as a convicted prisoner. Kreis's complaint asserts claims against 34 defendants, including Northampton County, a Northampton County Department of Corrections employee, various NCP employees, Primecare Medical, Inc., and various Primecare employees. Compl. pp. 5–21, Dkt. No. 2.[1]

As explained below, the Court will dismiss certain claims with prejudice, dismiss certain claims without prejudice, and allow certain claims to proceed for responsive pleading. Specifically, the Court will dismiss with prejudice the following six claims: (1) deliberate indifference claims asserted against nonmedical personnel who observed medication distribution; (2) deliberate indifference claims based on alleged interfering with Kreis's continuous positive airway pressure (CPAP) machine, providing crushed pills, and failing to place Kreis on medical observation; (3) due process claims arising from Kreis's February 2025 placement in disciplinary segregation;

[1] Kreis submitted the Court's complaint form for prisoners filing civil rights claims, along with more than 300 additional pages of handwritten descriptions of daily events, grievance forms, and other documents. The Court considers Kreis's entire submission to comprise his complaint and uses the ECF stamped page numbers for ease of reference. Where appropriate, grammar, spelling, and punctuation in the complaint have been altered for clarity.

(4) all claims arising from the handling of grievances; (5) all claims based on violations of PREA; and (6) all claims arising from violation of prison policy.

The Court will dismiss without prejudice the following five claims: (1) deliberate indifference claims based on the alleged failing of medical staff to use a vagus nerve stimulation device during seizures; (2) due process claims based on Kreis's September 2024 placement in disciplinary segregation; (3) claims against Northampton County; (4) retaliation claims against all Defendants except NCP Administrator Ryan Keesler; (5) and Kreis's claims against Primecare nurse Melody, Primecare nurse Kathleen Maher, and NCP corrections officer Anthony Pier.

The Court is prepared to serve the following claims for a responsive pleading: (1) deliberate indifference claims against Primecare and certain Primecare employees; (2) supervisory liability claims against Primecare employees Lauren Tamburino and Shane Caffery; and (3) retaliation claims against Keesler. Kreis will be granted the option to proceed only on these claims or file an Amended Complaint.

## I. BACKGROUND

Kreis alleges that he has been subjected to retaliation since arriving at NCP in August 2024 because he previously pursued a civil rights action against NCP, NCP employees, Primecare, and Primecare employees based on events that occurred while he was a pretrial detainee at NCP in 2020 and 2021. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360 (E.D. Pa.) ("*Kreis I*").[2] In *Kreis I*, the Court permitted Kreis to proceed on claims against the Northampton County Department of Corrections administrator, several NCP employees, Primecare, and various Primecare employees. *Kreis I*, No. 21-2360, Dkt. Nos. 55, 63. Kreis's excessive force, retaliation,

[2] The Court takes judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.").

failure to protect, and deliberate indifference claims against these defendants proceeded through discovery. In September 2025, the Court entered an Order granting in part the defendants' motion for summary judgment but denying the motion as to Kreis's deliberate indifference claim against Primecare employee Shane Caffery, and his excessive force claims against NCP employees Jeremy Ackerman and Michael Gazzano. *Kreis I*, No. 21-2360, Dkt. No. 215. Two months later, the case was settled and dismissed pursuant to Local Rule 41.1(b). *Kreis I*, No. 21-2360, Dkt. No. 236. Kreis alleges that all defendants in his current action were either named in *Kreis I* or were otherwise aware of it and retaliated against him as a result. *See* Compl.

Because the complaint spans over 300 pages, the Court will briefly summarize the allegations and where necessary include additional factual allegations in its legal discussion.

The complaint alleges incidents of deliberate indifference to Kreis's serious medical needs. *See* Compl. Kreis alleges that he was diagnosed with epilepsy when he was 13 nd has been treated for this condition at St. Luke's Neurology since then. Compl. p. 87. He has been prescribed anticonvulsant drugs to address that condition. Compl. pp. 40, 135. The drugs must be administered every 12 hours and cannot be crushed. Compl. pp. 40, 61. He claims he needs to receive name brand drugs, including Trileptal, Vimpat, and Onfi, rather than generic substitutes. Compl. p. 60. Kreis's physician has also directed that he be always be on medical observation because he suffers from OSA (obstructive sleep apnea), which causes him to stop breathing while he is sleeping. Compl. pp. 39, 41. This condition also requires use of a CPAP machine. Compl. p. 42. Kreis's medical conditions and his prescribed care are included in his medical file, which the medical staff can access. *See, e.g.*, Compl. pp. 41, 58, 62, 63. Most allegations describe incidents during which medical personnel failed to provide care according to Kreis's medical instructions. *See* Compl. Kreis claims that this conduct constitutes deliberate indifference to his serious medical

needs and further claims that the Defendants engaged in the conduct described in retaliation for his filing of *Kreis I*. *See* Compl.

Kreis alleges that because of the Defendants' conduct, he has experienced severe mental anguish, headaches and dizziness, lightheadedness, and back, neck, and right knee pain. Compl. p. 28. He claims that he requires a neurologist's treatment to control his seizures and mental therapy, which was unavailable when he was at NCP. Compl. p. 28. He asserts First Amendment retaliation, Eighth Amendment deliberate indifference, and Fourteenth Amendment due process claims. Compl. p. 6. He seeks money damages and injunctive relief.[3] Compl. p. 28.

## II. STANDARD OF REVIEW

Because Kreis is proceeding *in forma pauperis*, Dkt. No. 7, the Court must dismiss his case if it determines the complaint fails to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1915(e)(2)(B)(ii) imposes the same standard as Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). Conclusory allegations are insufficient. *Id.* at 678. The Court accepts the "facts in the complaint as true, draws all reasonable inferences in [Kreis's] favor, and asks only whether the complaint contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023). Because Kreis is pro se, the Court will construe the complaint liberally and hold it to less stringent standards. *Id.*

[3] Kreis requests that the Court investigate the living conditions at NCP, Compl. p. 28, but that request is denied as moot now that Kreis has been released from NCP, *see Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993) (finding relief moot after inmate had been released from that unit before district court ruled).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To be liable, defendants "must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Iqbal*, 556 U.S. at 676 (explaining that a § 1983 plaintiff must pleaded each defendant's "individual actions" violated the Constitution).

### A. Deliberate indifference

Kreis's primary complaint is that the medical staff failed to adhere to his physicians' instructions regarding his anticonvulsant drugs. Kreis also alleges that he was not placed on medical observation, that some of the defendants interfered with his use of his CPAP machine, and that Primecare staff did not use a vagus nerve stimulation (VNS) magnet when he experiences seizures.

To state a constitutional claim based on the failure to provide medical treatment, Kreis must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The Fourteenth Amendment protects Kreis when he was a pretrial detainee, and the Eighth Amendment applies after conviction. *See Hubbard v. Taylor*, 399 F.3d 150, 165–66 (3d Cir. 2005). Under either amendment, the Court applies the same standard for claims for inadequate medical care. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003).

A prison official is deliberately indifferent only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

the inference." *Farmer*, 511 U.S. at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up). Deliberate indifference is properly alleged in "various contexts, including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for nonmedical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (cleaned up).

**1. Failure to provide anticonvulsants as prescribed**

**a. Primecare employees**

Kreis alleges that, for five days after his intake at NCP, he did not receive Onfi, an anti-convulsant because it was unavailable at NCP and then received it sporadically until September 2024. Compl. p. 35. He claims that he experienced a "break through" seizure on September 15, 2024, due to the lack of Onfi. Compl. p. 35. Following that seizure, Kreis spoke to Primecare employee Shane Caffery, who is responsible for stocking and distributing prescription medication, and Primecare employee Paulina Foley about his physician's directions that he receive his anticonvulsants every 12 hours. Compl. pp. 40, 50, 60. Though Foley agreed to investigate the issue, she did nothing. Compl. pp. 40, 50, 60.

Kreis alleges the following, nonexhaustive incidents in which defendant failed to follow his physicians' directions:

1. On October 3, 2024, Bonnie Gleason did not provide Trileptal and told Kreis, "We have no more." Compl. p. 50.

2. On October 26, 2024, Darcey Fritz provided generic Trileptal because Caffery had not yet reordered the name brand drug. Compl. p. 62.
3. On October 28, 2024, Kreis's medication arrived late due to staffing issues. Compl. p. 65.
4. On November 2, 2024, Ivy provided generic Trileptal, explaining that the name brand drugs had not been ordered. Compl. p. 67.
5. On November 3, 2024, Joan Kneas provided generic Trileptal and told Kreis, "I was looking for [the name brand Trileptal] but we don't have it." Compl. p. 69.
6. On November 29, 2024, Kneas again provided generic Trileptal, and told Kreis they were not ordering his brand name drugs anymore. Compl. p. 77.
7. On December 6, 2024, Ivy provided name brand Trileptal but generic Vimpat. Compl. p. 82.
8. On December 7, 2024, Candia-Romero provided generic Trileptal and confirmed to Kreis that she poured the pills. Compl. p. 84. That evening, Kneas provided generic Trileptal pills that Fritz poured. Compl. p. 85.
9. On December 14, 2024, Gleason provided generic anticonvulsants. Compl. p. 106. That evening, Kneas provided generic medication, commenting, "Your name brand specific medications are in medical, they just don't do their jobs or give a s***." Compl. p. 107.
10. On December 15, 2024, Gleason provided generic anticonvulsants. Compl. p. 108.
11. On December 16, 2024, Candia-Romero and Ivy provided generic drugs at morning and evening medication distribution, respectively. Compl. pp. 110, 111.
12. On January 14, 2025, Payton provided generic anticonvulsants. Compl. Part 2 p. 14.
13. On January 16 and 18, 2025, Ladanna provided generic anticonvulsants. Compl. pp. 25, 28.

14. On January 29, 2025, Kreis was not provided with any Onfi because, as Nathalia explained during medication distribution, “there is no more.” Compl. pp. 38, 40.

Kreis alleges that Caffery has spoken to him about stocking the correct name brand prescription drugs, which implies that he and the medical staff knew they were not providing adequate care. Compl. p. 73. He claims that improper medication has caused seizures. *See, e.g.,* Compl. p. 78.

In short, Kreis alleges that despite clear instructions from his physicians, he regularly received generic rather than name brand drugs, and his medication was not always provided every 12 hours as ordered. *See* Compl. p. 58 (noting doctor’s instructions that “[y]ou must take your medication 12 hours apart and need to be on medical observation” because of risk of complications.); Compl. p. 63 (alleging that Kreis’s file reflects “brand name only,” “medical observation”) He alleges that all medical staff are aware of these instructions as they are in his file. He alleges that some Primecare personnel have acknowledged that the drugs they were providing were not the name brand drugs prescribed by his physicians. He primarily faults Caffery, who oversees ordering prescription drugs; Tamburino, who oversees staff; and Foley, who inputs inmates’ health information into their files. Compl. pp. 50, 60. But he also alleges that staff members “pour” drugs, *see* Compl. pp. 84, 85, and that Caffery does not monitor when other employees dispense medication, Compl. p. 93.

A repeated failure to provide necessary medication creates an inference of deliberate indifference against personnel who fail to provide that necessary medication. *Kreis I*, 2025 WL 2779340, at *4 (citing *Concepcion v. Russell*, No. 25-4479, 2025 WL 2447792, at *4 (E.D. Pa. Aug. 25, 2025)). At this early stage of the litigation, Kreis has stated plausible deliberate indifference claims against Primecare and Primecare employees Caffery, Tamburino, Foley, Fritz,

Gleason, Candia-Romero, Payton, Ladanna, Nathalia, Ivy, and Kneas. Kreis's claims against Melody and Kathleen Maher will be dismissed without prejudice. The complaint lacks any factual allegations about Melody, and the allegations against Maher are undeveloped and conclusory.

Kreis also noted that, in October 2024, Primecare employee Lauren Tamburino provided crushed pills. Compl. p. 61. This single incident fails to state a plausible claim and will be dismissed with prejudice. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *see also Beasley v. Dauphin Cnty. Prison*, No. 24- 1897, 2024 WL 4755494, at *2 (M.D. Pa. Nov. 12, 2024) (discussing crushed pills). He also claims that Primecare employee Fritz denied his request for Tylenol to treat a headache in December 2024. Compl. p. 57. A headache, however, is not a "serious medical need," thus this incident—and the two similar ones that occurred when correctional officers failed to provide Tylenol, Compl. pp. 46, 64—do not give rise to deliberate indifference claims.

**b. Nonmedical personnel**

Kreis identifies NCP officials who supervised Primecare medical personnel during medication distribution, and the Court understands him to be asserting deliberate indifference claims against these individuals based on the administration of medication not in accordance with his physicians' directions. These claims are implausible.

"If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236. The named nonmedical

personnel were aware that Kreis was receiving care from medical professionals. He does not allege that these defendants were aware that he was not receiving care as prescribed by his physicians, or that they acted in any way that was deliberately indifferent to his serious medical needs. Accordingly, Kreis cannot state plausible deliberate indifference claims against them. These claims will be dismissed with prejudice.

**2. Interference with CPAP machine**

Kreis alleges that he was prescribed a CPAP machine and was called to the medical unit to discuss this need with Foley and Caffrey in September 2024. Compl. p. 41. Primecare obtained the machine for Kreis. Compl. p. 41. He alleges, however, that several defendants interfered with his use of the machine. In October 2024, Kreis requested that A. Rosario help with the machine. Compl. p. 48. She told him to "Go away," refused to assist him, and refused to call medical for assistance. Compl. p. 48. As a result, he experienced choking while sleeping. Compl. p. 48. The next morning, A. Rosario turned on the lights in his cell, which had the effect of cutting the power to the outlet powering the CPAP machine, rendering it unusable. Compl. p. 48. Kreis again woke choking. Compl. p. 48. Kreis asked A. Rosario to turn the switch back off and she refused, stating "too bad the switch is staying in the on position." Compl. p. 48. Later that morning, A. Rosario allowed other inmates to switch the power on and off, again interfering with Kreis's use of the CPAP machine. Compl. p. 51. Later that same day, Kreis asked Davis to turn the switch to the off position so he could use his CPAP machine, but Davis refused, stating "No one told me about it so the switch is staying on, I don't know." Compl. p. 52.

The next day, Kreis asked Caleb Pinkowski to please turn the outlet on so his CPAP machine would work, and while Pinkowski said "okay whatever," he did not turn the outlet back on. Compl. p. 52. Kreis could not use his machine, and he again choked while sleeping. Compl.

p. 52. A few days later, A. Rosario again allowed other inmates to turn the power on and off in Kreis's cell, denying Kreis the use of his CPAP machine. Compl. p. 54. That evening, A. Rosario commented, "because you are the inmate and I am the CO, I don't care what you are saying. The switch is staying in this position, and the power outlet can stay off. I don't care you're not using your breathing thing LOL." Compl. p. 55. Keis asked her to allow power to the outlet and suggested she use her flashlight for light, but she refused, stating "What? And make me work hard?" Compl. p. 55. As a result, he could not use his machine while he slept, causing him to choke. Compl. p. 55. Finally, Kreis alleges that a few days after that, at the beginning of the first shift, A. Rosario shut off power to his CPAP machine, commenting "Oh well, you can't use that machine thing LOL." Compl. p. 57. The Court understands Kreis to be asserting deliberate indifference claims against A. Rosario, Davis, and Pinkowski based on their interference with his use of his CPAP machine. These claims are implausible.

District courts have repeatedly found that a delay in the use of the CPAP machine, absent any medical harm resulting from such a delay, is an insufficient basis for a deliberate indifference claim. *White v. Lycoming Cnty. Prison*, No. 21-00781, 2023 WL 4865985, at *6 (M.D. Pa. July 31, 2023) (dismissing with prejudice pretrial detainee's deliberate indifference claims based on several instances in which power to his CPAP machine was cut and he woke choking because inmate "failed to allege any significant or lasting injury"); *Kreis v. Northampton Cnty. Prison*, No. 21-CV-2360, 2022 WL 4236692, *10 (E.D. Pa. Sept. 14, 2022) (alleged short-lived aberration from using the CPAP machine does not equate to a plausible § 1983 claim).

Kreis describes eight incidents that occurred over four days during which defendants interfered with his use of his CPAP machine. Other than being awakened by choking, he does not

identify any lasting injury from these events. While regrettable, this short-lived interference does not rise to the level of a plausible § 1983 claim, and these claims will be dismissed with prejudice.[4]

### 3. Failure to place Kreis on medical observation

Kreis alleges that despite his physician's direction that he be placed on medical observation for sleep apnea monitoring, he has been placed in a cell on F Tier, which is not a medical observation unit. Compl. pp. 40, 41. He appears to attribute this decision to Caffery, *see* Compl. p. 40, but it is unclear whether Caffrey is responsible for cell assignment. Kreis elsewhere alleges that Ryan Keesler assigned him to a cell on F Tier. Compl. p. 66. Additionally, he alleges that the medical staff's computer reflects that he is on "medical observation F Tier pursuant to Primecare." Compl. p. 129. Kreis alleges that the correctional officer's station is adjacent to his cell, presumably making heightened observation practical. Compl. p. 129. Kreis also alleges that NCP has only five beds in the medical housing unit. Compl. p. 129.

This claim is implausible as pleaded. Although he appears to assert this claim against Caffery and Tamburino, Kreis's allegations suggest that others may be responsible for placement decisions. He also acknowledges that he has been placed on medical observation following a seizure and that the computer reflects that he was placed on medical observation in the cell he was then occupying. Additionally, though he claims that it is impossible for him to be on medical observation on F Tier, he alleges that on at least one occasion, staff were instructed to check on him following a seizure, suggesting that heightened observation is available in locations other than

---

[4] Regarding his VNS claim, Kreis does not identify specific instances during which he was experiencing a seizure and an individual defendant failed or refused to use the VNS or that he lacked access to it. To the extent Kreis claims that the failure of the medical staff to use the VNS device constitutes deliberate indifference, the claim is inadequately developed and implausible. The claim will be dismissed without prejudice, and Kreis may amend it.

the medical housing unit. Finally, Kreis does not identify any ill effects he has suffered from the alleged failure to place him on medical observation. This claim will be dismissed with prejudice.

**B. Supervisory liability claims against Caffery and Tamburino**

Kreis alleges that Caffery and Tamburino oversaw NCP's medical unit and repeatedly failed to order prescription medication, provide prescription medication according to physicians' instructions, and supervise employees who distributed prescription drugs. *See, e.g.*, Compl. Part 2 pp. 46, 47, 48. Regarding the incidents of alleged indifference to his serious medical needs, Kreis says that "I tell the supervisors over and over, they acknowledge and acquiesce." Compl. p. 91.

Simply overseeing a medical unit is insufficient for a civil rights action because the defendant "must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207. Rather, suits against supervisors "must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). One method to establish supervisory liability is alleging a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinate's violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Kreis's alleges that Caffery and Tamburino were aware of his claims that the medical staff was violating his constitutional rights and acquiesced in the conduct. That is sufficient to state a plausible supervisory liability claim against Caffery and Tamburino at this stage of the litigation.

**C. Claim against Primecare**

Kreis also asserts a deliberate indifference claim against Primecare, a private corporation. Private corporations under contract to provide medical services at a jail or prison may be liable under § 1983 "only if their policies or customs caused the constitutional violation." *Montanez*, 154 F.4th at 142. Kreis alleges that Primecare has implemented a policy that permits it to substitute

alternatives to name brand drugs prescribed by inmates' physicians. Compl. p. 71. He further alleges that Primecare's corporate offices delayed approval of his name brand drugs for two months and that the generic versions of the drugs Primecare provided caused seizures. Compl. p. 72; *see also* Compl. p. 83 (citing policy of using generics unless corporate approves name brand drugs); Compl. p. 93 (citing policy of substituting generic drugs despite physicians' direction). This policy is reflected in Caffery's alleged repeated failure to order name brand drugs, and his acknowledgment that this was an issue that required his attention. This claim will proceed.

### D. Placement in disciplinary segregation

Kreis claims that on three occasions he was placed in disciplinary segregation, violating his due process rights. He alleges that on September 25, 2024, Laisha Ramos issued a false misconduct, claiming that Kreis told her, "F*** the air you're breathing." Compl. p. 44. Kreis pleaded guilty to the misconduct because of prior threats made by Keesler, who presided at the disciplinary hearing. Compl. p. 44. As a result, Kreis was sent to E Tier, which he refers to as "the Hole." Compl. p. 44.

On September 30, 2024, Defendant Pagani issued a false misconduct stating that Kreis had shoved another inmate and made a racial slur. Compl. p. 47. Kreis again pleaded guilty to the misconduct at his hearing, allegedly out of fear of Keesler's retribution. Compl. p. 47. Because he had received a CPAP machine earlier that day, he was not cleared to be placed in "the Hole." As a result, he was confined to his cell for a period of disciplinary segregation. Compl. p. 47. He alleges that during this time, Pagani took everything from his cell, including legal work, which was not inventoried and for which he did not receive a property sheet. Compl. p. 47.

On February 13, 2025, Kreis presented J. Rosario with a request slip, asking that he be kept separate from Chesson Nazir, with whom Kreis was familiar prior to his detention at NCP. Compl.

Part 2 p. 58. Nazir had allegedly instigated fights with Kreis and threatened to shoot him following their release from NCP. Compl. Part 2 p. 58. In response, Blake Haring allegedly told J. Rosario to place Kreis in disciplinary segregation. Compl. Part 2 p. 58. Although the allegations are unclear, it appears that J. Rosario was also ordered to issue a formal misconduct to Kreis. Compl. Part 2 p. 58. The misconduct falsely stated that Kreis called Nazir the n-word. Compl. Part 2 p. 58. Kreis alleges that Keesler is the disciplinary case administrator overseeing the case. Compl. Part 2 p. 58. He alleges that he wrote to Director of Corrections Michael Pittaro to explain the situation and seek assistance, describing the situation as absurd. Compl. Part 2 pp. 58, 59.

On February 18, 2025, Kreis was escorted to a disciplinary hearing presided over by Keesler. Compl. Part 2 p. 65. Although he alleges he was not provided with an opportunity to defend himself or call witnesses, he contradicts himself by alleging that he had the opportunity to tell Keesler at the hearing that he had not said anything to Nazir. Compl. Part 2 p. 65. Kreis received ten days of disciplinary segregation following the hearing. Compl. Part 2 p. 65.

The first two incidents Kreis describes occurred prior to his conviction, thus he was a pretrial detainee at the time. The Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)). While "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (per curiam) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197,

204 (3d Cir. 2024)). With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections" outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff*, 418 U.S. at 563 –66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

The "filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process." *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (per curiam). Due process is satisfied, even when a fraudulent report is filed, when "an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

"Detention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when (1) there is a showing of express intent to punish on the part of those officials; (2) the restriction or condition is not rationally related to a legitimate non-punitive government purpose, i.e., if it is arbitrary or purposeless; or (3) the restriction is excessive in light of that purpose." *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (cleaned up). "Maintaining internal security and order in jails and prisons are legitimate governmental objectives" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* (cleaned up). In other

words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 (noting "that a restrictive housing assignment . . . predicated on a legitimate managerial concern . . . will typically foreclose the substantive due process inquiry").

From a procedural standpoint, "[t]he degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons." *Id.* at 70. *Wolff*'s procedures apply for disciplinary reasons; *Hewitt*'s procedures apply for administrative reasons. *See Hewitt v. Helms,* 459 U.S. 460 (1983); *see also Lewis v. Williams*, No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70).

Kreis omits whether he received written notice of the charges against him or a written statement of the reasons for the disciplinary action following issuance of the September 2024 misconducts. He does allege that in both instances he was afforded a hearing before being placed in disciplinary segregation. This claim is insufficiently developed to permit the Court to determine whether the process Kreis received was in accordance with *Wolff* and will be dismissed as implausible. The dismissal will be without prejudice to Kreis amending the claim.

At the time of his February 2025 placement in disciplinary segregation, Kreis was a convicted prisoner, thus a different standard governs his due process claim. "Due process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will

rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith*, 293 F.3d at 653 (quoting *Sandin*, 515 U.S. at 486).

In deciding whether conditions are atypical for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017). In determining whether a hardship is atypical, the relevant comparator is the general population. *Id.* at 564.

Kreis alleges that after being issued a false misconduct, he was afforded a hearing where he denied the charge against him prior to being placed on disciplinary segregation for ten days. Compl. Part 2 p. 65. Because he was afforded process and because his period of disciplinary segregation was much less than the thirty days found not to violate due process in *Sandin*, Kreis's claim is implausible and will be dismissed with prejudice because amendment would be futile.

**E. Retaliation Claims**

The Court understands Kreis to be asserting retaliation claims against all the named defendants. He alleges that he pursued claims against NCP, NCP employees, Primecare, and its employees in *Kreis I*, and that the case was still pending when he entered NCP in August 2024. Docket entries in *Kreis I* reflect that the case was not settled until November 2025 and was thus pending when the events described in the complaint occurred. Kreis claims that all the defendants retaliated against him because he filed *Kreis I*. Virtually every entry in his journal-like complaint concludes with a claim by Kreis that the conduct described occurred in retaliation for *Kreis I*.

In support of this claim, Kreis describes an incident that occurred on September 4, 2024. Before that, Kreis submitted an Inmate Request form advising that he believed that he would be in danger of a physical assault from any inmate placed in his cell because of his sleep apnea and

described such a placement as a "failure to protect." Compl. p. 36. Kreis alleges that Keesler, upon receiving the form, threatened him with physical assault and used obscene language: "If you ever send me another request slip like this Kreis, I will beat the shit out of your fucking 5' 6" tall pussy ass! You have been trying to sue us for years you bitch! How is that going for you asshole? If you ever send me any request slips or grievances about shit I will house you alone on E Tier on administrative segregation you pussy! Do you want to fight? Hell I will give you my address!" Compl. p. 38. Kreis claims that Keesler's conduct constituted retaliation for *Kreis I*. Compl. p. 38.

To state a plausible retaliation claim, a prisoner must allege that (1) he engaged in constitutionally protected conduct, (2) he suffered an sufficiently adverse action, and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Kreis engaged in constitutionally protected conduct. *See Smith*, 293 F.3d at 653. He suffered an adverse action. *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (per curiam) (noting that "being moved to restricted housing" and "being issued misconduct charges" constitute adverse action). And the "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" is circumstantial evidence of retaliatory motive. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Kreis has therefore stated a plausible retaliation claim against Keesler. As to the other defendants, however, there are no allegations suggesting they were aware of or motivated by the prior litigation and subjected Kreis to adverse actions as a result. Accordingly, these claims are implausible and will be dismissed without prejudice.

**F. Claims Against Northampton County**

Kreis asserts a claim against Northampton County based on the events alleged in his complaint. To state a claim for municipal liability, a plaintiff must allege that the defendant's

policies or customs caused the alleged constitutional violations. *See Monell*, 436 U.S. at 694. The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an affirmative link between the policy or custom and the particular constitutional violation" alleged. *Id.* (cleaned up). Allegations that paraphrase the standard for municipal liability are too vague and generalized to support a claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.").

Kreis alleges that the Northampton County solicitor's office has a policy of delegating the responsibility for inmate healthcare to Primecare, and that the policy includes deliberately not monitoring the quality of the care provided. Compl. Part 2 p. 77. He claims the solicitor's office is on notice that Primecare's care is inadequate because of lawsuits filed against it, including his, but nonetheless continues with the alleged policy. Compl. Part 2 p. 78. He claims that the county's refusal to take responsibility for the understaffed medical unit and undertrained personnel has allowed them to be deliberately indifferent to his serious medical needs. Compl. Part 2 p. 78. Kreis's allegation that the county has maintained a policy of permitting poor healthcare at NCP is too vague and conclusory to state a plausible municipal liability claim. The claim will be dismissed without prejudice.

### G. Claims Arising from the Grievance Process

Kreis includes allegations related to his filing of grievances. He alleges that on November 3, 2024, Robert Thoma refused to sign a request slip for a grievance form, stating, “I want to know why you need it or I am not signing it because it may not be grievable,” and “I will send you to the hole it if is b*******.” Compl. p. 68. On December 9, 2024, Martin Sylvan, who is not listed as a defendant, spoke to Kreis about a grievance he filed after Keesler threatened him, and though the allegations are somewhat unclear, it appears that the grievance was denied initially and on appeal. Compl. p. 90. On January 23, 2025, Blake Haring refused to provide Kreis with a grievance form to grieve the loss of legal paperwork from his cell. Compl. Part 2 p. 33. Kreis alleges that by filing numerous medical grievances and one administrative grievance, he has advised NCP Grievance Administrator Thomas Herstich, Primecare, unidentified NCP administrators, Tamburino, and Caffery about the medical staff’s repeatedly providing him with generic rather than name brand drugs and all have “acknowledged and acquiesced” in the complained of conduct. Compl. Part 2 pp. 52–53, 54, 61.[5] Construing his allegations liberally, the Court understands Kreis to be seeking to assert claims against the individuals identified based on their participation in the grievance process. These claims are implausible.

As an initial matter, participation in the grievance process does not, without more, establish involvement in any underlying constitutional violation. *See Curtis v. Wetzel*, 763 F. App’x 259, 263 (3d Cir. 2019) (per curiam) (agreeing that defendants “who participated only in the denial of [plaintiff’s] grievances” “lacked the requisite personal involvement”).

---

[5] Additionally, Kreis includes additional handwritten pages and completed grievance forms with his complaint, which the Court understands are intended to establish that Kreis has exhausted his administrative remedies rather than to state additional claims. *See* Compl. Part 2 pp. 89–145.

Additionally, to the extent Kreis's claims are based on the handling of his grievances, or interference with his ability to file grievances, they are implausible because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (per curiam) (collecting cases). Accordingly, allegations such as those raised by Kreis predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (per curiam) (nothing that "any allegations of improprieties in the handling of his grievance" do "not state a cognizable claim under § 1983"). Kreis's claims based on interference with or participation in the grievance process will be dismissed with prejudice.

### H. Additional Claims

#### 1. PREA Claim

Kreis alleges that on December 13, 2024, he submitted a request slip and "called PREA" when another inmate, who had previously touched him, stated, "Is there anyone else to f*** besides this one little boy here?" Compl. p. 102. PREA is the Prison Rape Elimination Act, 34 U.S.C. § 30301. He alleges that Michael Chlebrowski, Oliver LaRocco, and Brad Nicholas were present at the time, but that nothing was done about the request slip or the phone call. Compl. p. 102. On December 15, 2024, Kreis spoke to Chlebrowski about the incident. Compl. p. 109. Chlebrowski stated that he had never received a call about the incident and would investigate it. Compl. p. 109. On December 17, 2024, Kreis followed up with Chlebrowski, asking if he had learned anything about the PREA call Kreis had placed. Compl. p. 113. He responded that he knew only what he had been told by Haring, who professed to know nothing about it. Compl. p. 113. James Spaziani allegedly confirmed that none of the shift supervisors admitted knowing anything

about the PREA call Kreis placed, and no investigation was undertaken. Compl. p. 113. The Court understands Kreis to be asserting a claim based on a PREA violation, but this claim is implausible.

There is no private right of action under the PREA. *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (per curiam). Courts in this district regularly dismiss claims based on PREA violations because "nothing in the language of the statute establishes a private right of action." *Clark v. Camper*, No. 22-3054, 2023 WL 2796084, at *4 (E.D. Pa. Apr. 5, 2023) (collecting cases). To the extent Kreis challenges the quality of the investigation into his PREA complaints, he has no freestanding right to such an investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."). Thus, any claim Kreis brings based on PREA violations must be dismissed as a matter of law.

**2. Claim Against Jodi Ruggiero**

Kreis alleges that on September 24, 2024, he spoke to Jodi Ruggiero, a Jail Advisory Board representative, about the break through seizure he experienced after he received medication at random times or not at all. Compl. p. 43. Although it is allegedly her job to help inmates stay safe and to address problems they encounter, she refused to acknowledge Kreis's complaint about the medical staff and told him to "Get the hell away from me." Compl. p. 43. He claims that correctional officer Lanekequa Harrison witnessed the encounter. Compl. p. 43. The nature of the claim against Ruggiero is unclear, but to the extent Kreis seeks to assert a claim against her because she failed to perform her job according to prison policy, the claim is implausible.

"As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures." *Peterson v. Franrak*, No. 25-4538, 2025 WL 3485825, at *6 (E.D. Pa. Dec. 4, 2025) (collecting cases).

Similarly, "a violation of internal prison procedures does not create a constitutional violation." *Hernandez-Santana v. Little*, No. 24-6447, 2025 WL 2538435, at *5 (E.D. Pa. Sept. 3, 2025)). This claim will be dismissed with prejudice.

**3. Claim against Anthony Pier**

Kreis alleges that Anthony Peir ordered that he be handcuffed during epileptic seizures. Compl. Part 2 p. 2. He claims that Pier did so in retaliation for *Kreis I*, and that he has insufficient medical training to put such an order in place. Compl. Part 2 p. 2. He further claims that handcuffing him during a seizure would result in injury. Compl. Part 2 p. 2. Kreis filed a grievance calling the order into question, and Tamburino responded that the order was designed to ensure safety and was not a medical decision. Compl. p. 166. To the extent Kreis is pursuing a retaliation claim, it is unclear that the order itself constitutes an adverse action, and Kreis does not allege that the order was ever implemented, i.e., that he was ever placed in handcuffs during a seizure. Further, he does not allege any facts suggesting a causal connection between *Kreis I*, which did not name Peir as a Defendant, and Pier's alleged conduct. As such, this claim is implausible as pleaded and will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses with prejudice the deliberate indifference claims asserted against nonmedical personnel; the deliberate indifference claims based on alleged interfering with Kreis's continuous positive airway pressure (CPAP) machine, providing crushed pills, and failing to place Kreis on medical observation; the due process claims arising from Kreis's February 2025 placement in disciplinary segregation; all claims arising from the handling of grievances; all claims based on PREA violations; and all claims arising from prison policy violations. The Court dismisses without prejudice the deliberate indifference claims based on the

alleged failing of medical staff to use a vagus nerve stimulation device during seizures; the due process claims based on Kreis's September 2024 placement in disciplinary segregation; the claims against Northampton County; the retaliation claims against everyone except Keesler; and the claims against Melody, Maher, and Pier. The Court is prepared to serve for a responsive pleading the deliberate indifference claims against Primecare and Primecare employees Caffery, Tamburino, Foley, Fritz, Gleason, Candia-Romero, Payton, Ladanna, Nathalia, Ivy, and Kneas; supervisory liability claims against Primecare employees Tamburino and Caffery; and retaliation claims against Keesler. Kreis will be granted the option to proceed only on these claims or file an Amended Complaint.

An appropriate Order follows.

**BY THE COURT:**

*_/s/ Jeffrey L. Schmehl_________*
**JEFFREY L. SCHMEHL, J.**